**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BRIAN DIXON, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR** |
| | ) | **VIOLATIONS OF THE** |
| EVO PAYMENTS, INC., RAFIK R. SIDHOM, | ) | **FEDERAL SECURITIES LAWS** |
| JAMES G. KELLY, MARK A. CHANCY, | ) | |
| VAHE A. DOMBALAGIAN, NIKKI T. | ) | JURY TRIAL DEMANDED |
| HARLAND, JOHN S. GARABEDIAN, | ) | |
| DAVID W. LEEDS, LAURA M. MILLER, | ) | |
| STACEY VALY PANAYIOTOU, GREGORY | ) | |
| S. POPE, and MATTHEW W. RAINO, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Brian Dixon ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1. Plaintiff brings this action against EVO Payments, Inc. ("EVO" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed acquisition of the Company by Global Payments Inc. ("Global Payments").[1]

---

[1] The proposed acquisition of the Company described herein is referred to as the "Proposed Transaction."

2.      On August 1, 2022, the Company entered into an Agreement and Plan of Merger with Global Payments and Falcon Merger Sub, Inc. ("Merger Sub") (the "Merger Agreement"). The Merger Agreement provides that EVO stockholders will receive $34.00 in cash for each share of Company common stock held.

3.      The Company's corporate directors subsequently authorized the September 22, 2022 filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights, among other things.[2]

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6.      This Court has jurisdiction over the claims asserted herein for violations of

---

[2] The Special Meeting at which stockholders will be asked to approve the Proposed Transaction currently is scheduled for October 26, 2022.

Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, the owner of EVO common stock.

10. Defendant EVO is a Delaware corporation with its principal executive offices located at 10 Glenlake Parkway, South Tower, Suite 950, Atlanta, Georgia 30328. EVO's shares trade on the Nasdaq Global Market under the ticker symbol "EVOP." EVO is an integrated merchant acquirer and payment processor in the Americas and Europe. The Company's offerings include: (a) a highly productive and scaled sales distribution network, including exclusive global financial institution and tech-enabled referral partnerships, (b) three proprietary, in-house processing platforms that are connected by a single point of integration, and (c) a comprehensive suite of payment and commerce solutions, including integrated software, at the physical point-of-sale, eCommerce, and business-to-business solutions.

11. Defendant Rafik R. Sidhom ("Sidhom") is the Company's founder and has been Chairman of the Board and a director of the Company at all relevant times. Defendant Sidhom

is also the Chief Executive Officer and controlling shareholder of Blueapple, Inc. ("Blueapple"), which stands to receive over $142 million in connection with the early termination of the tax receivable agreement entered into in connection with EVO's initial public offering (the "TRA Termination").[3]

12. Defendant James G. Kelly ("Kelly") has been Chief Executive Officer and a director of the Company at all relevant times. Defendant Kelly and the James G. Kelly Grantor Trust collectively stand to receive over $4.7 million in connection with the TRA Termination.[4]

13. Defendant Mark A. Chancy has been a director of the Company at all relevant times.

14. Defendant Vahe A. Dombalagian ("Dombalagian") has been a director of the Company at all relevant times. Defendant Dombalagian is a managing director of Madison Dearborn Partners, LLC ("MDP LLC"), which owns approximately 20.6% of the Company's outstanding stock and stands to receive over $67 million in connection with the TRA Termination.[5]

15. Defendant Nikki T. Harland has been a director of the Company at all relevant times.

16. Defendant John S. Garabedian has been a director of the Company at all relevant times.

17. Defendant David W. Leeds has been a director of the Company at all relevant times.

---

[3] *See* Proxy Statement at 65.

[4] *See id.*

[5] *See id.* at 65, 103.

4

18. Defendant Laura M. Miller has been a director of the Company at all relevant times.

19. Defendant Stacey Valy Panayiotou has been a director of the Company at all relevant times.

20. Defendant Gregory S. Pope has been a director of the Company at all relevant times.

21. Defendant Matthew W. Raino ("Raino") has been a director of the Company at all relevant times. Defendant Raino is a managing director of MDP LLC.

22. Defendant Defendants identified in paragraphs 11-21 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

23. On August 1, 2022, Global Payments and EVO jointly announced in relevant part:

> ATLANTA — August 1, 2022 — Global Payments Inc. (NYSE: GPN), a leading worldwide provider of payment technology and software solutions, and EVO Payments, Inc. (NASDAQ: EVOP), a leading global provider of payment technology integrations and acquiring solutions, today announced that Global Payments will acquire EVO in an all-cash transaction for $34.00 per share.
>
> The transaction will significantly Increase Global Payments' target 5dderssable markets, further enhance its leadership in integrated payments worldwide, expand its presence in new and existing faster growth geographies, and augment its B2B software and payment solutions with the addition of accounts receivable software with broad third-party acceptance.
>
> "The acquisition of EVO is highly complementary to our technology-enabled strategy and provides meaningful opportunities to increase scale in our business globally," said Cameron Bready, President and Chief Operating Officer, Global Payments. "Together with EVO, we are positioned to deliver an unparalleled suite of distinctive software and payment solutions to our combined 4.5 million merchant locations and more than 1,500 financial institutions worldwide."

The transaction will expand Global Payments' geographic footprint into attractive new geographies such as Poland, Germany, Chile, and upon closing, Greece, as well as enhance its scale in existing markets, including the United States, Canada, Mexico, Spain, Ireland and the United Kingdom.

The acquisition will also add leading accounts receivable automation software capabilities that complement Global Payments' existing B2B and accounts payable offerings.  Further, EVO will bring an array of key technology partners and proprietary integrations, including with the most widely used ERP software providers.

"Joining EVO and Global Payments will unite highly complementary portfolios of technology-enabled products and partnerships to create an even stronger organization serving a broader customer base," added Jim Kelly, Chief Executive Officer, EVO.  "Over the last decade, the EVO team has worked diligently to advance our innovative solutions, strengthen the service we provide to our bank and technology-enabled partners, and grow our global footprint. This transaction is an achievement for our company, and we believe it delivers compelling value to our shareholders and accelerates our growth opportunities."

**Transaction Details**

The transaction has been unanimously approved by each company's Board of Directors.  Pursuant to the terms of the merger agreement, Global Payments will acquire the outstanding equity of EVO for $34.00 per share in cash ($4.0 billion of enterprise value for EVO).  The purchase price represents a premium of approximately 24% and 40% to EVO's last closing price and to its 60-day average price, respectively, as of July 29, 2022.

Global Payments expects to finance the acquisition with cash on hand and a committed bank facility.  Silver Lake will make a strategic investment of $1.5 billion in Global Payments in the form of a convertible note.  In connection with the investment by Silver Lake, and subject to market conditions and other factors, Global Payments expects to enter into a call spread or other derivative transaction designed to raise the effective conversion premium of the convertible note.

The transaction, which is subject to EVO stockholder approval, regulatory approvals and other customary closing conditions, is expected to deliver $125 million of run-rate synergies and be accretive in the first year after close.  The transaction is expected to close no later than the first quarter of 2023.

Certain investment funds affiliated with Madison Dearborn Partners, LLC and other EVO stockholders have entered into voting agreements pursuant to which they have agreed, among other things, to vote their shares of EVO stock in favor

of the transaction, subject to certain conditions. These stockholders currently represent approximately 22% of the voting power of EVO's stock.

**The Materially Incomplete and Misleading Proxy Statement**

24.     The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on September 22, 2022. The Proxy Statement, which recommends that EVO stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the financial forecasts for the Company, as well as the financial analyses underlying the fairness opinion provided by Citi Global Markets Inc. ("Citi"), financial advisor to the Board; and (b) potential conflicts of interest faced by Citi and Company insiders.

*Material Misrepresentations and/or Omissions Concerning Financial Forecasts for EVO and Citi's Financial Analyses*

25.     The Proxy Statement fails to disclose material information concerning the financial forecasts for EVO, including the line items underlying the calculation of: (a) Adjusted EBITDA; (b) Adjusted Net Income Per Share; and (c) Unlevered After-Tax Free Cash Flows.

26.     The Proxy Statement also fails to disclose material information concerning Citi's financial analyses.

27.     With respect to the *Discounted Cash Flow Analysis* performed by Citi, the Proxy Statement fails to disclose: (a) the Company's terminal year unlevered after-tax free cash flow; (b) the Company's terminal values; (c) the inputs and assumptions underlying the range of discount rates Citi utilized in connection with the analysis; (d) the Company's net debt; and (e) the Company's fully diluted outstanding shares.

28.     With respect to the *Selected Public Companies Analysis* performed by Citi, the Proxy Statement fails to disclose: (a) the individual financial metrics for each of the selected

companies and analyzed by Citi; (b) the Company's net debt; (c) the Company's non-controlling interest in consolidated entities (including *pro forma* adjustments for pending acquisitions); (d) the Company's investments in equity securities; and (e) the Company's fully diluted outstanding shares.

29. With respect to the *Selected Precedent Transactions Analysis* performed by Citi, the Proxy Statement fails to disclose: (a) the individual financial metrics for each of the selected transactions analyzed by Citi; (b) the Company's net debt; (c) the Company's non-controlling interest in consolidated entities (including pro forma adjustments for pending acquisitions); (d) the Company's investments in equity securities; and (e) the Company's fully diluted outstanding shares.

30. With respect to the analysis of Wall Street research analysts' one-year forward price targets performed by Citi, the Proxy Statement fails to disclose the individual price targets observed and the sources thereof.

31. With respect to the analysis of implied premiums paid in selected acquisition transactions performed by Citi, the Proxy Statement fails to disclose the transactions analyzed and the individual premiums observed for each transaction.

*Material Misrepresentations and/or Omissions Concerning Citi and Company Insiders' Potential Conflicts of Interest*

32. The Proxy Statement fails to disclose material information concerning Citi's potential conflicts of interest, including the details of any services Citi or its affiliates have provided to MDP LLC and Blueapple (or their respective affiliates) in the two years prior to the delivery of its fairness opinion, and any compensation Citi or its affiliates have received for such services provided.

33. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by Company insiders, including whether any members of Company management have secured positions with the combined company. The Proxy Statement further fails to disclose the details of any employment and retention-related discussions and negotiations that occurred between Global Payments and EVO's executive officers, including who participated in all such communications, when they occurred and their content.

34. The omission of the above-referenced information renders statements in the "Management Projections," "Opinion of EVO's Financial Advisor," "Background of the Merger," and "Interests of Certain Persons in the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

35. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of EVO will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and EVO**

36. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

37. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially

9

misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. EVO is liable as the issuer of these statements.

38. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

39. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

40. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

41. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

42. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

43. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

44.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

45.     The Individual Defendants acted as controlling persons of EVO within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of EVO and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

46.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

47.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

48. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of the Company, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Company stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and

proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: October 7, 2022  **LONG LAW, LLC**

By: */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@LongLawDE.com

*Attorneys for Plaintiff*